**BULL ATTORNEYS, P.A.**
10111 E. 21st Street N., Suite 204
Wichita, Kansas 67206
316-684-4400/Fax: 316-684-4405

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT WICHITA, KANSAS

| | |
|---|---|
| ANTONIO VARGAS BAUTISTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| MASTEC, INC., a foreign Florida ) | |
| Corporation; WANZEK CONSTRUCTION, ) | |
| INC., a foreign NORTH DAKOTA ) | |
| CORPORATON; UNION LEASING ) | |
| TRUST a foreign Delaware STATUTORY ) | |
| TRUST; UNION LEASING INC., a foreign ) | |
| Illinois Corporation and JEFFERY GLENN, ) | |
| an Individual, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

COMES NOW Plaintiff, Antonio Vargas Bautista, by and through counsel, Tony L. Atterbury, and Michael Baumberger of Bull Attorneys, P.A. and for his claims against the Defendants, alleges and states:

### IDENTITY OF THE PARTIES

1. Plaintiff is a citizen of the State of Kansas.

2. Defendant MASTEC, Inc. is a foreign for-profit Florida Corporation. Its principal place of business is located at 800 South Douglas Road, Suite 1200, Coral Gables, Florida 33134. For diversity purposes, it is deemed to be a citizen of the States of Florida. It can be served through its registered agent, Corporation Service Company, 1201 Hays Street,

Tallahassee, Florida 32301.

3. Defendant WANZEK CONSTRUCTION, Inc. is a North Dakota Corporation. Its principal place of business is 800 South Douglas Road, Suite 1200, Coral Gables, Florida 33134. For diversity purposes, it is deemed to be a citizen of the States North Dakota and Florida. It can be served through its registered agent, the Corporation Service Company, located at 418 North 2nd Street, Bismarck, North Dakota 58501.

4. Defendant UNION LEASING TRUST is a foreign for-profit Delaware Statutory Trust. Its principal place of business is 425 North Martingale Road, Floor 6, Schaumburg, Illinois 60173. For diversity purposes it is deemed to be a citizen of the States of Delaware and Illinois. It can be served through its registered agent, BNY Mellon Trust of Delaware located at 301 Bellevue Parkway, 3rd Floor, Wilmington, Delaware 19809.

5. Defendant UNION LEASING, Inc. is an Illinois Corporation. Its principal place of business is 425 North Martingale Road, Floor 6, Schaumburg, Illinois 60173. For diversity purposes, it is deemed to be a citizen of the State of Illinois. It can be served through its registered agent, CT Corporation System located at 2028 South Lasalle Street, Suite 814, Chicago, Illinois 60604.

6. All of the corporate and statutory Defendants shall be referred herein after collectively as the ("MASTEC GROUP").

7. Defendant Jeffery Glenn ("Glenn") is a citizen of the State of Texas and can be served at his residence located at 6213 Bowie Street, Amarillo, Texas 79118.

**JURISDICTION AND VENUE**

8. This Court has proper venue and jurisdiction over the persons and the subject matter of this action.

9. Plaintiff is a citizen of the State of Kansas. Defendant Glenn is a citizen of the State of Texas. None of the corporate/statutory trust Defendants are citizens of the State of Kansas. Therefore, the Plaintiff and none of the Defendants are from the same state. Plaintiff asserts claims against the Defendants for recovery of an amount in excess of $75,000.00, exclusive of interests and costs. Thus, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

10. The collision giving rise to Plaintiff's causes of action occurred in Ford County, Kansas, which is within this judicial district. Thus, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS OF FACT

11. On or about the 30th day of March, 2022, Plaintiff was traveling northbound on K Ave. in Dodge City, Kansas when Defendant Glenn who was operating a commercial vehicle eastbound on Cedar Street, in the course and scope of his employment for the MASTEC GROUP, negligently, carelessly and recklessly failed to yield the right-of-way at the intersection of K Ave. and Cedar Street, thereby proximately causing a collision, injuries and damages to the Plaintiff.

12. Defendant Glenn struck the driver side of the Plaintiff's truck causing substantial damage resulting in his vehicle being destroyed.

13. The accident was investigated by the Dodge City Police Department under Local Case No. 2205449DC.

14. The investigating officer determined that Defendant Glenn was at-fault for the accident and issued him Citation No. E270682 for inattentive driving.

15. Defendant Glenn was subsequently found "Guilty" of the citation. See the

3

screenshot below from the court records entered in the case. A complete copy of the records is attached as **Exhibit A**.

[Image of Kansas Uniform Complaint and Notice to Appear, Dodge City Municipal Court, Case No. 2205449 / 22-270682, Defendant: Glenn, Jeffrey Lawson, DOB 2/12/1987, charging failure to yield right of way at uncontrolled intersection on 3/30/2022, with plea of No Contest dated 8-4-22, fine $75.00, cost $108.]

16. Defendant Glenn has a lengthy criminal history and should never have been hired or allowed to operate a commercial motor vehicle. Below is a summary of some of his criminal convictions. A copy of his Criminal History obtained from the Texas Department of Public

4

Safety is attached as **Exhibit B**.

    a.    2004 EXPIRED DL

    b.    2004 NO INSURANCE

    c.    2006 POSESSION CONTROLLED SUBSTANCE, SECOND DEGREE FELONY

    d.    2008 DRIVING WHILE INTOXICATED SECOND MISDEMEANOR



17. At the time of the accident and through all allegations herein, Defendant Glenn was acting as an employee and/or agent, or alternatively, under a contract or lease for hire and for one or all of the entities in the MASTEC GROUP and as a result the actions and omissions of Defendant Glenn are the actions and omissions of the MASTEC GROUP under the doctrines of Respondent Superior and Vicarious Liability.

18. The commercial vehicle Defendant Glenn was driving at the time of the accident had the name "WANZEK" on it.  A search of the Department of Transportation's (DOT) Company Snapshot website confirms that WANZENK had previously applied for authority to operate with the DOT and was issued DOT# 366828.  A copy this document obtained from the DOT's website is attached as **Exhibit C**.  A photo of the commercial vehicle is set forth below.



19. The commercial vehicle also indicated that WANZEK is a "MASTEC CORPORATION." This is also consistent with what it set forth for legal name of WANZEK on **Exhibit C**.

20. The DOT's website indicates on the Safer Measurement System that **"U.S. DOT# 366828 has no current for-hire operating authority with the FMSCA."** A copy of this document obtained from the DOT's website is attached as **Exhibit D**.

21. A search of the DOT's Company Snapshot website confirms that MASTEC CORORATION had previously applied for authority to operate with the DOT and was issued DOT# 40405986. A copy of this document obtained from the DOT's website is attached as **Exhibit E**.

22. The DOT's website indicates on the Safer Measurement System that **"U.S. DOT# 4045987 has no current for-hire operating authority with the FMSCA."** A copy of this document obtained from the DOT's website is attached as **Exhibit F**.

23. The commercial vehicle that Defendant Glenn was operating at the time of the accident was owned and/or controlled and/or entrusted to Defendant Glenn by Defendant Union Leasing Trust and/or Defendant Union Leasing, Inc.

24. The allegations contained in this Petition regarding the FMCSRs are set forth to establish that the Defendants did not comply with the industry standard of care and the minimum standards of care described under the FMCSR and the interpretive categories under the CSA BASICs to establish the negligent and wanton conduct of the Defendants and are not brought to allege a private cause of action for violation of the FMCSR.

25. **Exhibit D** also confirms that WANZEK had a history of negligently, recklessly, and carelessly maintaining its commercial vehicles. Below is the violation summary showing some of the most serious violations.

**VIOLATION SUMMARY**                                                                                                Vehicle Maint. Violations: 11

| Violations | Description | # Violations | # OOS Violations | Violation Severity Weight |
|---|---|---|---|---|
| 393.11TL | Truck-Tractor lower rear mud flaps retroreflective sheeting / reflex reflective material requirements for vehicles manufactured after July 1997 | 1 | 0 | 3 |
| 393.130C-CHVE | Heavy Vehicles/Equipment - Improper securement of heavy vehicles, equipment or machinery with crawler tracks or wheels. | 1 | 1 | 7 |
| 393.45(d) | Brake connections with leaks or constrictions | 1 | 0 | 4 |
| 393.45D-B | Air Brake - Audible air leak at a proper connection. | 1 | 0 | 4 |
| 393.55(e) | No or Defective ABS Malfunction Indicator Lamp for trailer manufactured after 03/01/1998 | 1 | 0 | 4 |
| 393.78 | Windshield wipers inoperative/defective | 1 | 0 | 1 |
| 393.83(g) | Exhaust leak under driver and/or sleeper compartment | 1 | 0 | 1 |
| 396.17(c) | Operating a CMV without proof of a periodic inspection | 1 | 0 | 4 |
| 396.3A1B | Brakes (general) Explain: | 1 | 0 | 4 |
| 396.5(b) | Oil and/or grease leak | 1 | 0 | 3 |
| 396.5B-L | Lubrication - Oil or grease leak. | 1 | 0 | 3 |

26. The FMCSRs define "motor carrier" as a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers, and representatives as well as

7

employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.R.F. § 390.5.

27. The FMCSA's website provides guidance on who is a "motor carrier":

> A motor carrier is defined in 49 CFR 390.5 as a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for **hiring, supervising, training, assigning, or dispatching of drivers** and **employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories**. As long as the parent corporation does not engage in the transportation of goods or passengers for compensation (i.e., exercising daily control over drivers and equipment; and, in the case of a for-hire motor carrier, soliciting customers, and billing and collecting freight charges), it would not be considered a motor carrier. The exercise of managerial control by the parent corporation by establishing operational policies and procedures, or through other forms of general oversight, does not, in and of itself, make it a motor carrier under FMCSA regulations.

https://www.fmcsa.dot.gov/regulations/title49/section/390.5

28. The FMCSR define "employer" in part as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business or assigns employees to operate it." 49 C.F.R. § 390.5.

29. The FMCSRs require that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR. 49 C.F.R. § 390.3(e)(1) and (2).

30. The FMCSRs provide that "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the [FMCSA] regulation must be complied with." 49 C.F.R. § 392.2.

31. The MCA provides that "A carrier . . . is liable for damages sustained by a person as a result of an action or omission of that carrier. . . in violation of this part." 49 U.S.C. § 14704(a)(2).

32. The MCA provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." 49 U.S.C. § 14101(a).

33. Defendants were at all material times acting as a "motor carrier" and an "employer" of Driver.

34. Defendants negligently and wantonly failed to provide safe and adequate service which proximately caused the injury and damages to Plaintiff.

35. At the time of the collision Defendant Glenn was operating a motor vehicle that was owned, managed, dispatched, and supervised by Defendant MASTEC GROUP.

36. Defendant MASTEC GROUP trained, employed, supervised, and retained Defendant Glenn.

37. The actions and omissions of Defendant Glenn are the actions and omissions of Defendant MASTEC GROUP under the Doctrines of Respondeat Superior and Vicarious Liability and upon information and belief are negligent and wanton for the following reasons:

    A)    Failing to yield right-of-way;

    B)    Driving distracted by talking on his cell phone while entering an open intersection;

    C)    Speeding at a speed too fast for the then existing conditions of moving traffic;

    D)    Driving too fast for existing traffic conditions;

    E)    Inattentive operation of a commercial motor vehicle;

    F)    Failure to keep a proper lookout;

G) Failure to warn;

H) Failure to take evasive action;

I) Careless driving;

J) Reckless driving;

K) Upon information and belief, operation of a motor vehicle while distracted and texting, dialing, or looking at a map location on a cellular phone contrary to the instructions in the Kansas Driving Handbook that warns drivers to not use cellular phones and other devices while operating their motor vehicle;

L) Upon information and belief, violation of K.S.A. 8-15,111 which places a duty upon drivers not to use cellular devices while operating a motor vehicle and which requires that no person shall operate a vehicle while using a wireless communication device to write, send or read a written communication by typing, sending, or reading a written communication, including, but not limited to a text message, instant message or electronic mail;

M) Operation of a commercial motor vehicle (CMV) without first ascertaining that movement can be safely made;

N) Failure to operate the commercial motor vehicle with reasonable care to keep the CMV under control and drive only within the driver's range of vision;

O) Failure to learn, observe, and follow distance and cushion rules for a commercial motor vehicle to avoid contact with other motor vehicles in the area;

P) Upon information and belief, failing to comply with the requirements and recommendations of the DOT and FMCSA regarding using the following safety protocols: Failing to perform post-collision investigations; failing to set up and

|     | utilize a Safety Review Board; failing to train drivers in defensive driving, hazard perception, and collision awareness techniques; |
| --- | --- |
| Q)  | Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. §§ 381 through 399; |
| R)  | Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R § 383.110, 49 C.F.R. § 383.11, 49 C.F.R. 383.113 by failing to have adequate safety management controls in place that would require and provide that the truck driver, Motor Carrier and/or Broker had the required skills and safety management controls required under these regulations; |
| S)  | Upon information and belief, Defendant MASTEC GROUP failed to meet the minimum duties and industry standards of care set forth under Form OP-1 which is the "Application for Motor Property Carrier and Broker Authority" which arises from OMB 2126-0016. This form requires under paragraph 30., "**APPLICANTS SUBJECT TO FEDERAL MOTOR CARRIER SAFETY REGULATIONS**. *If you will operate vehicles of more than 10,000 pounds GVWR and are, thus, subject to pertinent portions of the USDOT's Federal Motor Carrier Safety Regulations (FMCSRs) at 49 CFR, Chapter 3, Subchapter B (Parts 350-399), you must certify as follows:* Applicant has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial vehicles and the safe transportation of hazardous materials, and will comply with these regulations. In so certifying, applicant is verifying that, at a minimum, it:<br>    1) Has in place a system and an individual responsible for ensuring |

         overall compliance with FMCSRs.

        2) Can produce a copy of the FMCSRs and the Hazardous Materials Transportation Regulations.

        3) Has in place a driver safety training/orientation program.

        4) Has prepared and maintains an collision register (49 CFR 390.15).

        5) Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR 391).

        6) Has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance (49 CFR 392, 395, and 396).

        7) Is familiar with and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances testing requirements (49 CFR 382 and 40)." (See **Exhibit G,** Form OP-1).

T)    Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11(a) which requires that a person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle;

U)    Has in place a system and an individual responsible for ensuring overall

compliance with FMCSRs;

V) Can produce a copy of the FMCSRs and the Hazardous Materials Transportation Regulations;

W) Has in place a driver safety training/orientation program;

X) Has prepared and maintains an collision register (49 CFR 390.15);

Y) Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR 391);

Z) Has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance (49 CFR 392, 395, and 396);

AA) Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110, which requires all drivers have the knowledge and skills necessary to operate a CMV safely;

BB) Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a fleet vehicle and commercial motor vehicle when the Driver does not possess and demonstrate the safe driving skills required by this regulation;

CC) Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110 and § 383.111 by operating a fleet vehicle and commercial motor vehicle when the Driver did not have sufficient basic knowledge of safe operating regulations, without the "Required Knowledge" on safe operations regulations, safe vehicle control systems, CMV safety

13

        control systems, basic control, shifting, backing, visual search, communications, speed management, space management, night operations, extreme driving conditions, hazard perception, emergency maneuvers, skid control and recovery, relationship of cargo to vehicle control, vehicle inspections, hazardous materials, mountain driving, fatigue and awareness, air brakes, and combination vehicles such that the motor carrier and their driver can operate the vehicle safely;

DD) Failing to meet the minimum duties and industry standards set forth under 49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

EE) Upon information and belief, using a cellular phone device, wireless communication device or other PDA device while operating a motor vehicle and talking, texting, or looking at GPS directions, thereby violating K.S.A. 8-15,111 causing Defendant Glenn to be distracted;

FF) Defendant MASTEC GROUP and their respective agents, employees and representatives were negligent and wanton for negligent hiring, training, supervision, and retention of Defendant Glenn and his supervisory personnel. Defendant MASTEC GROUP negligently and/or wantonly hired unfit employees and agents and then failed to properly train, supervise, and monitor them and additionally retained employees and agents that were not performing their jobs properly or adequately. This includes, but is not limited to, the driver and his supervisory personnel. Defendant MASTEC GROUP has an obligation and legal duty to use reasonable care in selecting and retaining their employees, agents, and independent contractors, and was negligent in hiring,

selecting, training, monitoring and retaining their employees, agents, and independent contractors, including, but not limited to driver. Defendant MASTEC GROUP negligently and wantonly failed to use reasonable care in the hiring, selecting, training, monitoring, and retention of their employees and agents, including, but not limited to Defendant Glenn. Defendant MASTEC GROUP knew or reasonably should have known that they were not hiring safe and competent employees and agents and negligently and wantonly violated their duty to hire only safe and competent employees. Defendant MASTEC GROUP knew or reasonably should have known that their employees and agents, including, but not limited to driver, created and were an undue risk of harm to the Plaintiff, and negligently and wantonly failed to reprimand, retrain, or terminate their employees, agents, and independent contractors, including Defendant Glenn and his supervisory personnel following this collision;

GG) Defendant MASTEC GROUP's hiring, training, selecting, monitoring, supervision, and retention of unsafe and incompetent employees, agents, and independent contractors including Defendant Glenn and his supervisory personnel proximately caused the injuries to the Plaintiff;

HH) Failure to train Defendant Glenn in the proper hazard communication signals, hazard perception, and other safe operating protocols;

II) Failing to have adequate safety management protocols in place;

JJ) Failing to properly create and implement a proper safety program that would require the driver to be adequately tested in written form to determine that he has

appropriate defensive driving skills;

KK) Failure to implement a safety program that used the Smith System or the JJ Keller and Associates, Inc. safety programs for training with manuals, video presentations, testing and other similar forms of defensive driving training;

LL) Failure to test the driver for alcohol and drug consumption after this collision;

MM) Defendant MASTEC GROUP has ratified all conduct of Defendant Glenn either expressly or impliedly. Upon information and belief, Defendant Glenn was not reprimanded, retrained, or terminated following this collision;

NN) Negligence and negligence per se for violation of laws, ordinances, and statutes of the State of Kansas and Dodge City;

OO) Other negligent and wanton actions and omissions, which will be supplemented after discovery;

38. The Plaintiff brings a claim for the loss of consortium suffered by his spouse as a result of his injuries.

39. As a further direct and proximate result of the negligent and careless actions and omissionsof the Defendants, as aforesaid, Plaintiff, received injuries to his body, including, but not limited to his cervical spine, lumbar spine, bilateral shoulder, left knee and ultimately lumbar spine surgery.  Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE

THOUSAND DOLLARS ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against each of the Defendants, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), for costs herein, and for such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

**BULL ATTORNEYS, P.A.**

*/s/ Tony L. Atterbury*
Tony L. Atterbury, #20314
Michael L. Baumburger, #20381
10111 E. 21st Street N., Suite 204
Wichita, Kansas 67206
316-684-4400/Fax: 316-684-4405
Tony@bullattorneys.com
mike@bullattorneys.com
*Attorneys for Plaintiff*

## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

Plaintiff demands a pretrial conference and a trial by jury of twelve (12) persons in this matter.

## DESIGNATION FOR PLACE OF TRIAL

COMES NOW Plaintiffs and designates Wichita, Kansas as the place for trial in this matter.

*/s/ Tony L. Atterbury*
Tony L. Atterbury, #20314